UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORDAN JOEL ANDERSEN,

      Plaintiff,

v.                                  Case No. 8:23-cv-01567-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

      Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.   Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI. (Tr. 97). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. (Tr. 97-135). Plaintiff then requested an administrative

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

hearing. (Tr. 163). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 38–61). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 15–29). Subsequently, Plaintiff requested review from the Appeals Council which the Appeals Council denied. (Tr. 4–6). Plaintiff then timely filed a complaint with this Court who ultimately remanded the matter, finding that the ALJ did not properly address Plaintiff's treating psychiatrist's opinion. (Doc. 596–608). Following this Court's remand, a second hearing was held before a new ALJ who again found Plaintiff not disabled and denied Plaintiff's claim for benefits. (Tr. 531–570). Following the ALJ's decision, Plaintiff directly appealed the matter to this Court. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1983, claimed disability beginning July 24, 2019.[2] (Tr. 98). Plaintiff obtained a high school education and completed two years of college. (Tr. 108, 540). Plaintiff has minimal work experience as a car attendant, cashier, customer service representative, and greeter but has never held employment long enough to qualify as substantial gainful activity. (Tr. 108, 558, 566). Plaintiff alleged disability due to problems with his neck and back, a herniated disc, anxiety disorder, panic disorder, PTSD, bipolar disorder, ADHD, and insomnia. (Tr. 98).

---

[2] At the second hearing before an ALJ, Plaintiff amended his alleged onset date from October 1, 2017, to July 24, 2019. (Tr. 556).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 25, 2019. (Tr. 536). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: pre-existing lumbar spine degenerative disc disease, bipolar schizoaffective disorder with depression, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and panic disorder (20 CFR 416.920(c). (Tr. 537). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 537). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) with the following additional limitations: the claimant can lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours per day; sit 6 hours per day; never climb ladder/rope/scaffold; occasionally climb ramp/stairs, balance, stoop, kneel, crouch, crawl; must avoid vibration, hazardous machinery and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; cannot perform work requiring a specific production rate or pace, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 540). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

3

effects of his symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 540).

Pursuant to 20 CFR 416.965, the ALJ found Plaintiff to have no past relevant work experience. (Tr. 545). However, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a photocopying machine expert, packer, and mail clerk. (Tr. 546). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 547).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review,

further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the

grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner

6

are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating psychiatrist, Dr. John Pierson. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.   Assessing Medical Opinions**

Social Security Ruling (SSR) 96-8p,[3] which regulates the ALJ's assessment of a claimant's RFC, provides that an ALJ's RFC assessment must "consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Under the new Social Security Administration (SSA) regulations implemented as of March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate each medical opinion with consideration of the following five factors: (1) supportability; (2) consistency; (3) relationship with the

---

[3] SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the SSA. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). They are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). The ALJ is specifically required to consider the factors of **supportability** and **consistency** for each medical opinion. 20 C.F.R. § 416.920c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put simply, in determining the persuasiveness of a medical opinion, an ALJ must consider whether the opinion is 1) supported by the source's own medical records and 2) consistent with the record as a whole. Although it is unnecessary to refer to every piece of evidence, the ALJ must consider all evidence and articulate the weight given to probative evidence. *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Moreover, despite the substantive changes in the regulations, the current versions "still instruct[ ] an ALJ to weigh all medical opinions in light of the length, purpose and extent of the treatment relationship and frequency of examinations which continues to 'indicate the importance of treating physicians' opinions – especially where the physician has

maintained a longstanding and consistent relationship with the claimant'." *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *3 (M.D. Fla. July 12, 2021) (quoting *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 912 n.4 (11th Cir. 2021)).

### B. Dr. Pierson's Treatment and Opinion

Plaintiff began seeing Dr. Pierson in December 2016 for ongoing mental health issues. (Tr. 525). Dr. Pierson diagnosed Plaintiff with opioid dependence, mood disorder, and Agoraphobia and prescribed him Serequel, Remeron, Klonopin, Adderall, and Subutex. (Tr. 526). Plaintiff then began seeing Dr. Pierson on a monthly basis through the end of 2017 to help quell his opioid dependence and mood swings. (Tr. 512). In January 2018, Plaintiff expressed to Dr. Pierson that he was experiencing auditory hallucinations and impaired reality testing for which Dr. Pierson subsequently prescribed Plaintiff Risperdal. (Tr. 511). Plaintiff then began seeing Dr. Pierson bi-monthly primarily for his problems with reality testing and depressed mood though which continued throughout 2019. (Tr. 497–509). On August 21, 2019, Dr. Pierson filled out a Physical Assessment of Plaintiff's functioning and a Mental Capacity Form. On the Physical Assessment, Dr. Pierson noted his diagnoses of Plaintiff as "Schizoaffective Disorder, Depressed" and opined that Plaintiff would likely be sent from work three or four times a month as a result of his impairments. (Tr. 439). Similarly, in the Mental Capacity Form, Dr. Pierson opined that Plaintiff had a "marked" (i.e., substantial) limitation in his ability to sustain an ordinary routine and attendance at work. (Tr. 441).

9

Throughout the remainder of 2019 into 2020 Dr. Pierson's treatment of Plaintiff primarily focused on Plaintiff's opioid dependence, mood changes, anxiety, and attention problems. (Tr. 490–96). During this time, Plaintiff reported improvement in his symptoms and was noted to be living with his mother and attending college. (Tr. 502). However, on July 12, 2020, Plaintiff was Baker Acted by the Clearwater Police Department after being found wandering a neighborhood speaking into his keys like a phone and attempting to enter at least six houses he believed belonged to his friends. (Tr. 471). Plaintiff was admitted to Personal Enrichment Mental Health Services (PEMHS) and diagnosed with adjustment disorder with mixed disturbance of emotion and conduct, and opiate use disorder. (Tr. 455). He was discharged two days later and urged to follow up with Dr. Pierson. (Tr. 478–82). On August 20, 2020, Plaintiff did so and reported again hearing voices for which Trilafon was prescribed. (Tr. 494). Plaintiff continued to see Dr. Pierson until his retirement in 2021 at which point he began seeing Shane Lynne APRN at S&D Behavior Health LLC for anxiety, depression, ADHD, sleep problems, panic attacks, night terrors, schizoaffective disorder, bipolar disorder, and severe back pain/addiction. (Tr. 777). APRN Lynne initially saw Plaintiff in March 2021 and diagnosed him with ADHD, PTSD, generalized anxiety disorder, schizoaffective disorder, and bipolar affect disorder. (Tr. 770–71). Plaintiff returned for a follow up evaluation in April 2021. APRN Lynne renewed Plaintiff's medications which included Subutex 8mg, Adderall 20mg, Clonazepam 1mg, and Cogentin 2mg. (Tr. 763). In the medical record, APRN Lynne noted that Plaintiff was in music school,

and APRN Lynne needed to send a letter to Plaintiff's school regarding his diagnoses and treatment. (Tr. 763). Based on the evidence in the record, on April 15, 2021, APRN Lynne sent said letter informing the administration that Plaintiff had been dealing with mental health issues which were affecting his ability to complete daily tasks such as work and school. Specifically, Plaintiff was said to be experiencing "depression, severe panic attacks, difficulty remembering tasks, difficulty concentrating and getting tasks done." (Tr. 766). In July 2021, Plaintiff returned for his scheduled follow up appointment where he reported having manic episodes. (Tr. 762). Following this appointment, APRN Lynne provided an updated letter to Plaintiff's school. (Tr. 765). On September 8, 2021, APRN Lynne wrote a second letter to Plaintiff's school where he reported that Plaintiff's schizoaffective disorder, anxiety, and PTSD had become a bigger disruption to his daily life and commitments. (Tr. 764). In Plaintiff's October 2021 evaluation, APRN Lynne found that Plaintiff was "doing well." (Tr. 760). In March 2022, APRN Lynne noted conflicting reports, finding that Plaintiff was doing "pretty good" but also noting that his schizophrenia and bipolar disorder had been "acting up" since they last talked. (Tr. 758). On March 24, 2022, APRN Lynne reiterated these findings in a letter to Plaintiff's school. (Tr. 755). On June 6, 2022, Plaintiff had a follow up appointment where APRN Lynne noted that Plaintiff was "doing well." (Tr. 756). However, a few weeks later, on July 15, 2022, APRN Lynne authored another letter in which he noted having a medical consultation with Plaintiff on July 12, earlier than Plaintiff's scheduled follow-up appointment, as Plaintiff was suddenly

experiencing an onset of exacerbated symptoms resulting from his anxiety disorder and PTSD. (Tr. 757). APRN Lynne also noted that Plaintiff was "experiencing increased symptomology due to his schizoaffective disorder" and recommended that Plaintiff "would benefit from academic accommodations for students with psychiatric disabilities." (Tr. 757). In September 2022, APRN reported that Plaintiff was "better now" and doing "good in school." (Tr. 754). Following Plaintiff's October 2022 appointment, however, APRN Lynne reported that Plaintiff was again "hearing voices" and having difficulty concentrating. (Tr. 753). APRN Lynne noted that he would be making medication adjustments and sending a letter to Plaintiff's school. (Tr. 753). On October 12, 2022, APRN Lynne authored said letter again noting that Plaintiff was experiencing an "onset of exacerbated symptoms resulting from his anxiety disorder and PTSD" and "increased symptomology due to his schizoaffective disorder" and recommended that Plaintiff "would likely benefit from academic accommodations for students with psychiatric disabilities." (Tr. 752). Plaintiff's last documented appointment with APRN Lynne occurred in November 2022. At that time, APRN Lynne reported that overall Plaintiff was "doing well" and that the prescription Vraylar appeared to be helping with Plaintiff's symptoms. APRN Lynne also noted that he needed to edit a letter to Plaintiff's school. On December 14, 2022, APRN Lynne wrote a letter advising that due to Plaintiff's current psychiatric condition, in APRN Lynne's professional opinion, Plaintiff should medically withdraw from courses taken during that past school year as Plaintiff "was and is continuing treatment with medication

adjustments for the above listed diagnoses and could not complete the semester at St. Petersburg College as intended." (Tr. 742).

Plaintiff's sole argument on appeal is that the ALJ failed to support his disregard for portions of Dr. Pierson's opinion with substantial evidence. On August 21, 2019, Dr. Pierson completed a mental medical source statement in which he indicated Plaintiff experienced a moderate degree of mental health limitations in the areas of concentration, persistence, or maintaining pace; adapting or managing oneself; and interacting with others. (Tr. 442). The ALJ agreed with these assessments and incorporated them into his RFC analysis. (Tr. 537–545). However, the ALJ found unpersuasive Dr. Pierson's assessment that Plaintiff experienced a marked limitation in his ability to sustain ordinary and regular attendance at work and would experience 3–4 unplanned absences from work each month. (Tr. 545, 439). The ALJ disagreed with this finding solely because "some of the most recent treatment notes describe [Plaintiff] consistently attending follow up appointments with his treatment provider" (Tr. 545 (citing Ex. 9F)). The treatment notes referenced by the ALJ were Plaintiff's medical records from Shane Lynne, APRN. To the ALJ, Plaintiff's consistent appearance at follow up appointments with APRN Lynne suggested that Plaintiff did not suffer from a marked degree of limitation in his ability to sustain an ordinary and regular attendance at work. (Tr. 545).

### C.     Failure to Support with Substantial Evidence

The Eleventh Circuit has firmly recognized that "[m]any mental disorders—and bipolar disorder in particular—are characterized by the unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021). Thus, "an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Id.* (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)).

In *Simon*,[4] the plaintiff's treating psychologist, Dr. Turner, diagnosed the plaintiff with bipolar disorder, severe anxiety, and panic attacks and opined that the plaintiff had a marked limitation in his ability to preform simple tasks on a full-time basis, preform work requiring regular contact with others, and respond appropriately to the stress of customer work pressures. *Id.* at 1099. Dr. Turner's treatment notes in connection with these opinions were extensive – spanning across four years with over thirty meetings during which time Dr. Turner regularly noted that the plaintiff was displaying severe signs of mental illness to include frequent

---

[4] *Simon* addresses an ALJ's rejection of a treating physician's opinion in a social security claim filed before March 27, 2017, when the ALJ was required to give a treating physician's opinion "substantial or considerable weight unless there is good cause to discount [it]." 20 C.F.R. § 404.1527; *Simon*, 7 F. 4th at 1004. Even though the standard for considering medical opinions has since changed, the analysis presented in *Simon* regarding the unpredictability of mental disorders and the distinguishment of attending medical appointments from participating in a work environment remains valid and applicable.

panic attacks, racing thoughts, mood swings, and paranoia. *Id.* at 1105. However, the ALJ chose to give little weight to Dr. Turner's opinions, finding they were inconsistent with Dr. Turner's own notes, Plaintiff's personal testimony he was able to complete daily tasks, and evaluations with SSA consultants who found Plaintiff to be communicative and display good cognitive function during their evaluations. On appeal, however, the Eleventh Circuit rejected the notion that the ALJ's analysis was supported by substantial evidence.

As is instructive here, the Court held that when evaluating a claimant's medical records, "an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace . . . [as] it is not inconsistent—or even that unlikely— that a patient with a highly disruptive mood disorder, in a structured one-on-one conversation with a mental-health professional, might be capable of 'be[ing] redirected' from his 'tangential' thought processes so as to 'remain on topic'." *Id.* at 1107 (internal quotations omitted).  Inconsequential to the Court was the plaintiff's ability to "communicate, maintain eye contact, and follow simple instructions during a mental-health evaluation" as these functions "d[id] not have any obvious bearing on his mood swings, his panic attacks, his outbursts of anger, or his fear of leaving his home." *Id.* at 1108.

Here, the ALJ's disregard for Dr. Pierson's opinion as to Plaintiff's ability to sustain ordinary and regular attendance at work was based entirely on the fact that Plaintiff had been consistently attending follow up appointments with APRN

15

Lynne. (Tr. 545). In fact, the ALJ provided even less of an analysis than that presented in *Simon* as the ALJ declined to even comment on how Plaintiff presented at these appointments. To the ALJ, the mere fact that Plaintiff **attended** these appointments was a sufficient basis for discrediting Dr. Pierson's opinion. This conclusion is not supported by APRN Lynne's notes or consistent with the record as a whole. APRN Lynne's notes frequently reflect that though Plaintiff continued to attend appointments, Plaintiff's condition was and is variable. Though APRN Lynne found Plaintiff to be "doing well" and feeling "pretty good" at certain points, APRN Lynne also frequently noted that Plaintiff consistently struggled with "hearing voices," suffered from frequent flare ups in his schizophrenic symptoms, and consistently required medication adjustments. (Tr. 741–783). To this point, the final record from APRN Lynne reflects a recommendation that Plaintiff be permitted to medically withdraw from his college courses due to continuing treatment with medication adjustments for Plaintiff's diagnosed medical conditions. (Tr. 742).

  Notably, though the ALJ relied on APRN Lynne's notes to establish Plaintiff's ability to sustain regular work attendance, he curiously disregarded all statements by APRN Lynne in the letters he authored on the basis they contained only "vague and general assertions." (Tr. 545). While these letters do not rise to the standard of formal medical opinions, they were clearly written in conjunction with Plaintiff's ongoing evaluations by APRN Lynne and spoke to the variability of Plaintiff's condition and his difficulties participating in a scheduled, structured

environment. The ALJ's complete disregard for such records without further explanation constitutes impermissible cherry picking. *Compare Bevis v. Comm'r of Soc. Sec.*, 552 F. Supp. 3d 1266 (M.D. Fla. 2021) (holding that the ALJ's rejection of plaintiff's treating psychologist's medical opinion was not supported by substantial evidence where the ALJ relied on isolated entries in treatment notes indicating plaintiff was alert and responsive to reject the opinion), *with Vergara v. Commr. of Soc. Sec.*, No. 22-11671, 2023 WL 5814433 (11th Cir. Sept. 8, 2023) (upholding ALJ's rejection of treating psychologist's opinion where the ALJ fully described how the treating psychologist's opinion conflicted with record evidence to include: "(1) the different opinions of two state agency psychological consultants; (2) the kind and intensity of treatment [claimant] had received; (3) evidence that [claimant's] condition improved with consistent treatment and recommended psychotherapy; (4) [claimant's] mental status examinations; (5) [claimant's] reported activities of daily living; and (6) a third-party function report completed by [claimant's] brother.").

In contrast, the Commissioner argues that the treatment records of both APRN Lynne and Dr. Pierson fail to support a finding that Plaintiff suffers a marked degree of limitation in his ability to sustain an ordinary and regular attendance at work. In support thereof, the Commissioner cites to portions of APRN Lynne's records where Plaintiff's condition was afforded positive attributes such as "doing well," feeling "pretty good," and remaining "stable." (Doc. 18, at 10). The Commissioner also cites to Dr. Pierson's notes indicating that Plaintiff was

employed at a car wash and enrolled in college when Dr. Pierson submitted his medical source statement. (Doc. 18, at 12). The Commissioner further argues that throughout the course of Plaintiff's treatment with Dr. Pierson, Plaintiff was found to be productive on medication, even recording some music, achieved normal mental status examinations, and was able to undergo routine management of his mental impairments with medication refills. (Doc. 18, at 12). However, the ALJ made no mention of such evidence when discrediting Dr. Pierson's opinion as to Plaintiff's ability to sustain and ordinary and regular attendance at work. Thus, it appears that the Commissioner is making a post hoc argument, not addressed by the ALJ in his decision. Therefore, the Court cannot address this point here. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) ("[When the ALJ fails to state 'with sufficient clarity' the grounds for his evidentiary decisions, we will not affirm 'simply because some rationale might have supported the ALJ's conclusion,' and instead remand 'for further findings at the administrative hearing level'.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Thus, the Court finds that the ALJ failed to support his disregard for portions of Dr. Pierson's opinion with substantial evidence.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and REMANDED.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 19th day of September, 2024

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

19